(No. 4567– )

GEORGE McNARY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 22, 1956.*

JOHN R. SPRAGUE, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

George McNary, claimant, filed his complaint against the State of Illinois for personal injuries and property damage sustained as the outgrowth of an accident, which occurred on April 18, 1953, while he was driving in an easterly direction on U.S. Highway No. 50, near Olney, Illinois.

No answer was filed by respondent, and, under Rule 11 of this Court, a general traverse of all the allegations of the complaint will be considered to have been filed.

Claimant alleges that, just prior to and at the time of the occurrence in question, he was operating his automobile with due care and caution for his own safety and the safety of his automobile, and that respondent was guilty of six distinct acts of negligence. Generally, the acts of negligence charged are that the State of Illinois failed to maintain said highway in a reasonably safe condition for persons and traffic using it; that it permitted said highway, at the time and place in question, to be in a sunken condition, so as to allow water to

stand on it, and thereby causing it to be unsafe for vehicular traffic thereon; that, by and through its duly authorized agents and servants, it failed to warn by appropriate signs, signals, watchmen, or other means of warning, persons using said highway of the dangerous condition at the time and place in question, and particularly failed to warn the claimant of the hazardous condition of the highway; that it negligently and carelessly failed to remove an accumulation of water then and there standing upon said highway; that it failed to drain water standing on the highway; that it negligently and carelessly constructed the highway, so as to cause a low place to be on the travelled portion; that it could have foreseen that water would stand in said low place on said highway, and endanger traffic using said highway, and particularly claimant on the day in question.

As a direct and proximate result of the negligent acts of respondent, claimant, in traveling upon said route, ran into the water standing upon the highway. His automobile went out of control, and turned over; and he was thrown therefrom. As a result, he sustained personal injuries, and brings this action for damages in the sum of $7,500.00.

At the time of the trial before the Commissioner, it was stipulated as follows: "U. S. Highway No. 50 between the Village of Noble and the City of Olney in Richland County is a part of the system of state highways, and this section of the highway was constructed by the State of Illinois, Department of Public Works and Buildings, Division of Highways, in 1924 as a part of State Bond Issue Route No. 12. In 1947 this section of highway was resurfaced with a three inch thickness of asphalt, and, from the time of its initial construction

to the time of the trial, it has been under the jurisdiction of the Department of Public Works and Buildings, Division of Highways, for all purposes of reconstruction, repairs, maintenance and operation, including the date of the accident, April 18, 1953.''

Five witnesses testified on behalf of claimant, and there were two witnesses for respondent. Respondent also offered a Departmental Report in evidence.

On April 18, 1953, George McNary, claimant, was stationed at Granite City Engineers Depot, Granite City, Illinois. On the date of the accident he left camp at about 12:00 M., driving his 1941 Buick to Olney, Illinois, which was a distance of 125 miles. He had driven to Olney on State Route No. 50 several times. He had been traveling between 45 and 50 miles an hour, and just before entering the city limits of Olney, which is a city of about 8,000 population, he reduced his speed to between 30 and 35 miles an hour. The speed of his automobile was not testified to by all of the eye witnesses.

There was testimony that it had rained in the immediate vicinity of Olney on the morning of the 18th of April, 1953, but it seems that it rained more in and around Olney than west of there. There was testimony that west of Olney the rain had been very light. Claimant testified that the pavement west of Olney was wet until he got within about twenty feet of the city limits of Olney, where it was very apparent that more rain had fallen. It was a cloudy day, but visibility was good. Witnesses testified that from where the water appeared on the highway west you could see at least from one-quarter to one-half a mile.

The paved road, as it enters Olney, was eighteen feet in width, with shoulders located on both sides thereof,

and there was a slight ditch on the south side of the highway, adjoining the shoulder. An ice cream stand and a Studebaker Agency, owned by a Mr. Pool, were located on the south side of the road, and just east of the place where the accident happened was an intersecting road, which ran in a northerly and southerly direction. The highway on which claimant was traveling was laid out in a generally easterly and westerly direction.

Witnesses for claimant testified that for several years prior to the accident this particular portion of the highway, extending twenty feet outside of the city limits and within the city limits, during heavy rains, or when as much as three inches of rain fell, would become covered with water, and after a heavy rain would not drain for two or three hours, as the drainage provided on the south side of the road was not adequate to carry the water off of the highway. There was an area where the road was depressed, and the water covered the width of the highway, extending for approximately thirty feet running north and south, and approximately one hundred feet east and west.

The State of Illinois had removable signs, which they placed on the south side of the road, as you enter Olney from the west traveling east, warning traffic of water on the highway when this condtion existed. However, Mr. Rusk, who was the highway maintenance man for this particular stretch of road, testified that he lived three miles west of Noble, and five miles south and east of Olney. The accident happened on Saturday afternoon, and he was not on duty. On that afternoon he was driving to Olney, and he did not know that there was water on the pavement, as it had rained very little

at his residence. He had no notice from anyone that there was any water on the pavement. The signs warning traffic of water on the highway were at his home, and were only erected when there was a heavy rain. He did not know that there had been a heavy rain until he got into Olney. The warning signs had not been posted by him or anyone else prior to the accident. He did erect the warning signs that afternoon, after he learned of the accident.

The other witness, who testified as to the rainfall west of Olney, was Mr. Willis, a State Policeman, whose home was in Olney. He was dispatched to the scene of the accident at Olney, when called by radio from the station at Effingham, Illinois, the District Office for the area patrolled by him. He arrived at the accident at about 3:20 P.M. He noticed water on the highway about thirty feet west of the intersection. A speed limit sign, indicating that it was a thirty mile an hour zone, was posted at the city limits of Olney. He testified as to a conversation with Mr. McNary that evening. He stated Mr. McNary told him that, when he hit the water, he lost control of the car, which, in turn, left the pavement, and hit the pole. This witness had been working for respondent for three years, and during his three years of service had seen water on the pavement only about four times.

On cross-examination, he was asked if he knew that it had rained on April 18, 1953, and his answer was "no". He was also asked if he knew it had rained Friday night, and his answer was "no". He testified that it had not rained Saturday afternoon at Flora, Illinois, which was twenty-three miles from Olney. He had left Olney on Saturday morning, and he did not see any rain until he was east of Noble on his way back to the accident—

Noble was eight miles from Olney. The pavement was wet, but he did not notice any water standing on the shoulder. There had been no warning signs posted the day of the accident.

The three inch steel post embedded in concrete, and the guy wire referred to, which were the objects struck by claimant's car, were on the south side of the road near the garage and ice cream stand, being the side of the road on which claimant was traveling. When claimant's car struck the water, it appeared to slide, run off onto the shoulder, into and through the ditch, striking the post and guy wire, and tearing the post out of the ground. The car turned over, and claimant was thrown out and into the water. The car continued on twenty to thirty feet beyond the intersecting roadway, which was east of where the water was located on the highway. Claimant's automobile traveled through water for 100 feet. Claimant testified that, because of the dampness on the pavement, you could not see the pool of water until you were within about thirty feet of it. A witness for the claimant testified that you could see the water when you were 75 to 90 feet to the west of it.

There appears to be a slight curve in the road, and a slight incline to the west of the city limits of Olney. However, from the testimony offered by at least one of claimant's witnesses you could see for at least one-quarter to one half of a mile in driving from the west to the east.

There was a witness standing in the window of the garage, who saw claimant's car strike the water, veer to the south, strike the pole and guy wire, turn over on its side and throw claimant out, and then come to an erect position east of the intersection.

The estimates of the amount of water on the pavement at the time of the accident, and the area of pavement covered varied according to the witnesses. However, there was testimony that the water was between eight and ten inches deep. There were no actual measurements made of the length, depth, or width of the water. One of the witnesses testified that after a heavy downpour of rain the highway would drain within two hours.

There was a reluctance on certain eye witnesses to testify as to the speed of Mr. McNary's automobile when it was first noticed. We do have claimant and one other witness testifying to between thirty and thirty-five miles an hour, and other witnesses refusing to testify as to the speed, confining their testimony to what the automobile did, and the course that it took after it struck the water.

In order for claimant to recover, he must prove three distinct elements, namely: (1) That he was in the exercise of due care and caution for his own safety; (2) That the State of Illinois was negligent, as charged in the complaint, and that the negligence of the State of Illinois was the proximate cause of his personal injuries and the damage to his property; and (3) That damages were sustained.

This Court has held many times that the State of Illinois is not an insurer of all persons traveling upon its highways. We believe that the state should erect warning signs, and that the state did have constructive notice that the drainage, as one approaches Olney from the west driving east, was insufficient through the depressed area, and that the highway was inundated throughout this area, which would justify the erection of permanent signs by the State Highway Department warning motorists of said hazard.

Even though it might be said that the state should have erected and maintained not temporary but permanent warning signs, it is our opinion that claimant was guilty of contributory negligence. We cannot help but be impressed by the fact that this was a heavily travelled road. Claimant knew he was entering a city of 8,000 inhabitants, had driven through Olney before, and was not a complete stranger to the particular territory in question. He should have been driving with his car under control. The speed at which he was traveling, regardless of what was testified to, is proven by the distance the car traveled, the objects that it struck, the fact that it was going fast enough to right itself and travel the distance that it did, and the fact that the car was completely demolished, so that it had only a salvage value of $42.50. This speaks louder to us than any testimony offered by claimant as to his rate of speed.

It is the finding of this Court that claimant was guilty of contributory negligence, which would be a bar to recovery for personal injuries and property damage against respondent.

It is, therefore, not necessary for us to discuss the medical testimony, extent and nature of injuries, and the exhibits offered in connection therewith.

An award to claimant is, therefore, denied.